IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RYON CAREY,                           )
                                      )
                    Plaintiff,        )    **CIVIL ACTION**
                                      )
v.                                    )    No.  05-1176-MLB
                                      )
CITY OF CANTON, KANSAS, THELMA        )
EVERHART and PATRICK JOHNSON,         )
Individually and in their            )
Capacity as Members of the           )
Canton City Council,                  )
                                      )
                    Defendants.        )
_____)

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on defendants' motion for summary judgment.  (Doc. 43).  Plaintiff Ryon Carey has asserted claims against defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights by initiating prosecution against Carey on various occasions.  The case has been fully briefed and is ripe for decision.  (Docs. 44, 45, 54, 57).  For the reasons herein, defendants' motion for summary judgment is granted.

I.    **FACTS**

Carey owns rental property in Canton, Kansas, a small community with approximately 900 residents.  Canton is governed by a mayor and a city council with five members.  Defendant Thelma Everhart began serving as a council member in 1999 and currently remains in that position.  Defendant Patrick Johnson began serving as a council member in 1996 and ended his term in April 2004.  The responsibilities of the council include reporting concerns of citizens and their own observations of potential ordinance violations to the mayor.  These

concerns are reported during city council meetings, which occur once or twice each month.  The city attorney and chief of police are also present during the meetings.  (Docs. 44 at 4-5; 54 at 2).

A.   Nuisance Violations

In 2000, Carey was issued a citation for disturbing the peace. Carey was working in a building with loud music.  Defendant Everhart called the city hall to request an officer.  Everhart did not ask the officer to issue a ticket, but wanted the officer to ask Carey to turn down his music.  The complaint was ultimately dismissed on January 11, 2001.  (Docs. 44 at 10-11; 54 at 5).

In April 2002, Richard Clark was hired as the chief of police. As chief, Clark was responsible for enforcing city codes for nuisance violations.   Clark would drive around the city and record the violations on his clipboard.  Upon return to the office, Clark prepared notices to comply with ordinances and delivered the notices to property owners.  Mayor Dale Anderson would also inspect properties for potential violations and report those violations to Clark.  The city of Canton issued approximately 78 notices to comply between 2002 and 2005.  Out of those 78 notices, Carey was issued eighteen. (Docs. 44 at 6-7, 9; 54 at 2-4).

On December 17, 2002, the city attorney, David Shriver, filed two complaints against Carey that alleged Carey had "maintained a public nuisance by failing to repair property."  The first complaint was issued because one property had a garage that was falling over.  The second complaint was issued involved a lot with just a foundation. Shriver felt that the properties were unsafe and constituted a public nuisance.  The cases were initially set for trial on March 18, 2003,

but the trial was postponed.  The charges were continued several times and set again on July 1, 2004.  Carey's attorney successfully moved for a dismissal based on a violation of Carey's right to a speedy trial. The charges were dismissed on August 17, 2004.  (Docs. 44 at 11-13; 54 at 5-6).

Between October 2003 and August 2005, Carey was issued eleven notices for overly tall grass or weeds, three notices for dangerous or unfit structures, two notices for health nuisances and two notices for junked or abandoned vehicles.  As a result of non-compliance with one notice for an unlawfully stored vehicle, the city attorney filed a complaint in Canton Municipal Court on May 10, 2004.  That complaint was ultimately dismissed after Carey removed the vehicle from the property.  At this time, plaintiff owned seven rental properties in Canton.  (Docs. 44 at 7-9, 18; 54 at 3-4).

### B.   Vicious Dogs

Carey was issued citations on four different occasions for his dogs.  Between 2000 and 2005, the police department issued 56 complaints for dog at large and 6 complaints for vicious dogs.  One individual, Mark Hartman, was issued five complaints for dog at large.  (Docs. 44 at 18, exh. 7 at p. 6-8; 54 at 7).

On December 13, 2002, Carey was issued a citation by officer Trevor Mosher for dog at large and vicious dog.  Mosher's report states that Paula Colson's son was bitten by one of Carey's dogs. Mosher inspected the bite on the child's back.  Numerous witnesses observed the dogs attack Andrew Colson.  Carey informed Mosher that someone must have let his dogs out.  Carey stated that he wanted the officer to investigate a breaking and entering case.  Mosher reported

that Carey failed to cooperate with him when Mosher advised Carey that he was issuing a citation.  (Docs. 44 at 14-15; 54 at 6).

On December 27, 2002, Officer Ron Blaylock cited Carey for dog at large and harboring a vicious dog.  Blaylock's report states that John Martin was aggressively approached by the dogs while trying to cross the street.  An individual in Carey's front yard yelled at the dogs and they hesitated but then again "came at" Martin.  The individual in the yard yelled again at the dogs and the dogs returned to Carey's home.  Blaylock phoned Carey and was told that Carey did not let the dogs out of his home. (Docs. 44 at 15; 54 at 3-4).

On December 31, 2002, Amber Harper, a young girl, reported that she was bitten by one of Carey's dogs.  Chief Clark responded to the complaint, interviewed Amber, and issued Carey a citation for dog at large, vicious dog and no tags.  (Docs. 44 at 16; 54 at 7).

On July 22, 2003, Cody Peavy, a young child, was riding his bicycle when one of Carey's dogs jumped the fence and began biting Peavy's leg.  There were four witnesses to this incident.  Mosher issued a citation for a vicious dog violation.  (Docs. 44 at 16; 54 at 7).

The four dog complaints issued to Carey and the previous two property violations were consolidated into one case.  Carey's attorney also successfully moved for a dismissal of the dog violations on the basis that it violated Carey's right to a speedy trial.  The four dog violations were dismissed on August 17, 2004.  (Docs. 44 at 17; 54 at 7).

C.   Theft

On January 31, 2003, Mosher was notified by a citizen of Canton

that a trailer had been suspiciously hidden behind a vacant house on Carey's property.  Mosher was then dispatched to take a theft report from Connie Jo Gustus.  Gustus reported that her trailer was taken from her prior rental home, which she had rented from Carey.  Mosher went to the location of one of Carey's properties where the trailer had been suspiciously hidden.  Gustus identified the trailer as hers. (Docs. 44 at 19; 54 at 8).

On February 1, 2003, Mosher took a theft report from David Wegele.  Wegele was moving out of a residence he rented from Carey. Wegele returned to remove items from the storage shed and discovered that everything had been removed.  Wegele suspected that Carey removed the items since Wegele owed Carey money for the rent.  That same day, Mosher was dispatched to Carey's resident to take a theft report. Carey reported that the trailer he stored on his property was stolen. Carey stated that he had taken the trailer from Gustus' residence because she was behind on the rental payments.  Carey also stated that he removed Wegele's property because Wegele was behind on his rental payments.  Carey asserted that he had the authority to hold the property pursuant to landlord and tenant statutory law.  (Docs. 44 at 19-20; 54 at 8).

Clark instructed Mosher to prepare the reports and send them to the McPherson County District Attorney's office.  On February 24, 2004, a criminal complaint was filed against Carey in McPherson County District Court.  The complaint alleged two counts of criminal deprivation of property.  According to the complaint, Carey removed the tenants' property after cleaning out the homes.  Upon motion by the State of Kansas, the complaint was dismissed on October 2, 2003.

(Docs. 44 at 20-21; 54 at 8).

### D.   Surveillance of Carey's Residence

In 2001 and early 2002, Greg Cook was the acting chief of police of Canton. Defendants Everhart and Johnson told Cook that Carey had parties at his barn with high school boys. Cook watched activity at Carey's barn but did not ever issue any citations to Carey. Cook thought that there was a "witch hunt" going on for Carey. In February 2002, after serving approximately 6 months, Cook was terminated and replaced with Richard Clark. Another officer, Blaylock, informed Clark that Carey had parties with the kids. Clark told Blaylock not to single people out and to leave Carey alone. (Docs. 44 at 22-23; 54 at 8-9).

### E.   Sale of Carey's Property[1]

In 2003 or 2004, Carey was attempting to sell his property at 209 North Fifth in Canton. The potential buyers did not proceed with the sale of the house. Plaintiff asserts that the buyers were scared off after an article appeared in the newspaper about Carey's interactions with city officials.

### F.   Summary

Carey asserts that the Canton City Council, through members Everhart and Johnson, used their positions to initiate judicial and criminal proceedings and to harass Carey. Defendants respond that they did not initiate any proceedings against him and have not violated his constitutional rights. Everhart and Johnson have moved

---

[1] Carey had sought damages for interference with two of his rental properties, but now concedes that he has insufficient evidence to proceed with his claim regarding the property on 505 North Main. (Doc. 54 at 38).

for summary judgment on the basis of qualified immunity.  Defendant
City of Canton also seeks summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

The rules applicable to the resolution of this case, now at the
summary judgment stage, are well-known and are only briefly outlined
here.  Federal Rule of Civil Procedure 56(c) directs the entry of
summary judgment in favor of a party who "show[s] that there is no
genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).
An issue is "genuine" if sufficient evidence exists "so that a
rational trier of fact could resolve the issue either way" and "[a]n
issue is 'material' if under the substantive law it is essential to
the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc.,
144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully
briefed motion for summary judgment, the court must ultimately
determine "whether there is the need for a trial-whether, in other
words, there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably be
resolved in favor of either party."  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 250 (1986).  If so, the court cannot grant summary
judgment.  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677,
684 (10th Cir. 1991).

## III. ANALYSIS

A.   Section 1983 claim

Carey seeks monetary damages pursuant to 42 U.S.C. § 1983.  That
statute renders liable any person who "under color of [law] . . .
subjects, or causes to be subjected, . . . any [person] . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them."). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See American Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

There is a defense to a claim brought under section 1983. Government officials performing discretionary duties are afforded qualified immunity shielding them from civil damage liability. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity protects these officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See Wilson v. Layne, 526 U.S. 603, 609 (1999); Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well. See Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998).

"The framework for analyzing claims of qualified immunity on summary judgment is well settled." Baptiste, 147 F.3d at 1255. When a defendant has pled qualified immunity, the plaintiff bears the

burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. See Horstkoetter, 159 F.3d at 1277-78; Baptiste, 147 F.3d at 1255. As noted in County of Sacramento v. Lewis, 523 U.S. 833 (1998), the first step is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5; Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). "Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue." Baptiste, 147 F.3d at 1255 n.6.

To determine whether a plaintiff has sufficiently asserted the violation of a constitutional right at all, this court must determine whether the plaintiff's allegations, if true, state a claim for a violation of a constitutional right. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question. See id. Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court can not avoid the legal issue by simply framing it as a factual question. See Archer v. Sanchez, 933 F.2d 1526, 1530 & n.7 (10th Cir. 1991).

Even if a plaintiff meets this hurdle, the Tenth Circuit requires the contours of the right at issue to be sufficiently clear that a

reasonable official would have understood that what he was doing violated a right that was clearly established at the time the alleged acts took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). This standard, however, must be used in a particularized manner[2] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter, 159 F.3d at 1278. Were this level of particularity not required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson, 483 U.S. at 639-40 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

If plaintiff successfully thwarts defendant's qualified immunity defense, the ordinary summary judgment burden returns to defendant to show no material issues of fact remain that would defeat the claim of qualified immunity. See Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996). This standard requires defendant to show there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to defendant at the time. See id. Even if plaintiff is able to

---

[2] The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

withstand summary judgment, defendant is nonetheless able to reassert the defense of qualified immunity at trial.  See Gossett v. Oklahoma Bd. of Regents for Langston University, 245 F.3d 1172, 1181 n.5 (10th Cir. 2001).

Carey asserts that the various legal actions against him were a violation of his Fourth Amendment rights to be free from unreasonable searches and seizures.  Carey alleges that malicious prosecution is the basis for his section 1983 claim.[3]  In order to establish a constitutional violation occurred, the Tenth Circuit has stated that the court must utilize the common law elements of malicious prosecution as the starting point of the analysis.  Pierce v. Gilchrist, 359 F.3d 1279, 1289 (10th Cir. 2004)(citing Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996).  Under Kansas law, a plaintiff must establish the following elements in order to prevail upon a malicious prosecution claim: "(1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages."  Lindenman v. Umscheid, 255 Kan. 610, 875 P.2d 964, 974

---

[3] Carey argues that any prosecution of charges is a "seizure" for the purposes of the Fourth Amendment.  Doc. 56 at 23.  The Tenth Circuit and the United States Supreme Court, however, have failed to address the Fourth Amendment's protection against unreasonable seizures in the pretrial context.  See Taylor, 82 F.3d at 1561-62; Mason v. Stock, 955 F. Supp. 1293, 1307 (D. Kan. 1997).  This court is hesitant to find the actions in Carey's proceedings amounted to a seizure for Fourth Amendment purposes.  Nevertheless, the court will do so in this instance because the actions of defendants, regardless of whether the proceedings resulted in a  seizure, do not rise to the level of a constitutional violation.

(1994).

The proceedings at issue in this case include: (1) the criminal charges in McPherson County District Court which were dismissed in October 2003; (2) June 15, 2004, dismissal of ticket for unlawful storage of a vehicle; (3) August 17, 2004, dismissal of four cases for harboring a vicious dog and dog at large, and; (4) August 17, 2004, dismissal of two public nuisance charges.[4]   The first element to consider is whether defendants initiated, continued, or procured the proceedings.  Carey argues that the record is "replete with evidence that Everhart and Johnson had a 'vendetta' toward Ryon and were on a 'witch hunt' with regard to him."  Doc. 56 at 23.  Even if Everhart and Johnson were out to get him, Carey has failed to show that any of the proceedings were initiated, continued, or procured by Everhart and Johnson.  Carey has also failed to establish that the cases filed against him lacked probable cause.  Instead, Carey argues that the common law elements are not dispositive.  Carey, however, failed to note that the Tenth Circuit has instructed that the elements be a starting point and, as such, the court must address those elements. The record clearly shows that the police and city/county officials had probable cause to instigate and continue the proceedings against Carey.  See Price v. Cochran, 2003 WL 21054706, *7 (10th Cir. 2003)(a finding of probable cause is not undermined when there is evidence that the defendant retaliated against the plaintiff).[5]

_____

[4] The parties agree that any prior proceedings are barred by the applicable statute of limitations.  See docs. 56 at 20-21; 57 at 2.

[5] Carey's argument is that Pierce would not require probable cause as an element of a § 1983 claim.  However, apparently sensing that this argument may not be persuasive, Carey proceeds to assert

Even though Carey has failed to establish that the charges lacked probable cause or that Everhart and Johnson instigated, continued, or procured those proceedings, the court must still determine whether Everhart and Johnson violated Carey's rights.  In the Fourth Amendment malicious prosecution context, violations have been established by showing that a defendant included false statements in an arrest report.  See Pierce, 359 F.3d at 1296.  In this case, Carey has failed to put forth any evidence that Everhart and Johnson committed any act that violated his Fourth Amendment rights.  While Carey may assert that Everhart and Johnson sent officers on a "witch hunt," the evidence does not show that they had any involvement in the proceedings initiated against Carey.[6]

Carey also asserts that a violation of his rights occurred because of the selective prosecution against him.  In order to establish that his rights were violated by selective prosecution, Carey must show that "he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him." United States v. Furman, 31 F.3d 1034, 1037 (10th Cir. 1994).  To do so, Carey must point to a similarly situated individual that was not prosecuted.  Id.  Carey has not done so.  His argument that, on a

that he was "selectively prosecuted by the City of Canton via Everhart and Johnson, who encouraged and, to a certain extent, controlled the city attorney and the city police force."  (Doc. 54 at 36). Lack of probable cause and selective prosecution are not the same.

[6] Moreover, the testimony that Carey has offered in support of this "witch hunt" was given by individuals who were involved with defendants prior to 2002.  Carey has failed to put forth any evidence that Everhart and Johnson had a vendetta against him while the proceedings relevant to this case were pending.

-13-

percentage basis, he received more citations than others (e.g. that in 2002 and 2003 he received 17% of the "dog at large" violations) is not evidence of selective prosecution.

Since Carey has failed to establish that any constitutional violation occurred, the court finds that Everhart and Johnson are entitled to qualified immunity on his section 1983 claim.[7] Once the court concludes that the city officials did not commit a constitutional violation, the claim against the City of Canton, as the supervisory authority, is properly dismissed.[8] <u>Taylor</u>, 82 F.3d at 1564 (citing <u>Webber v. Mefford</u>, 43 F.3d 1340, 1344-45 (10th Cir. 1994)).

B.   Tort Claim

Plaintiff has also asserted a claim for intentional interference with business relations. Pursuant to <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715 (1966), the court declines to exercise pendent jurisdiction over plaintiff's state law claim. Therefore, this claim is dismissed as well. <u>See</u> <u>Gibbs</u>, 383 U.S. at 726 (stating that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

**IV.  CONCLUSION**

---

[7] Carey has conceded in his brief that his claim against Everhart and Johnson in their official capacities is to be treated as a suit against the City of Canton.

[8] Carey asserts in his brief that the officers in the vicious dog cases failed to adequately investigate Carey's claims. These contentions were not raised in the pretrial order. D. Kan. R. 16.2(c) clearly states that the pretrial order controls the subsequent course of the action. Carey has waived these contentions by his failure to include them in the pretrial order.

Defendants' motion for summary judgment (doc. 43) is granted.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.


IT IS SO ORDERED.

Dated this 16th   day of February 2007, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE

-15-